Case Number: CV 07-02661 VRW

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

### In re BETTA PRODUCTS, INC.

*Debtor*

## BETTA PRODUCTS, INC., AND DANA MC CURNIN, TRUSTEE OF THE BETTA PRODUCTS LITIGATION TRUST,

*Plaintiffs and Appellants*

**vs.**

## DISTRIBUTION SYSTEMS AND SERVICES, INC. (aka DSS),

*Defendant and Appellee*

### APPEAL FROM ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA
**Honorable ALAN JARASLOVSKY, Bankruptcy Judge**
**Bankruptcy Case No. 03-10925**
**Adversary No. 05-01046**

### OPENING BRIEF OF APPELLANTS BETTA PRODUCTS, INC., AND DANA MC CURNIN, TRUSTEE OF THE BETTA PRODUCTS LITIGATION TRUST, ON APPEAL OF JUDGMENT CONFIRMING ARBITRATION AWARD

### BRINKMAN PORTILLO, PC
Daren R. Brinkman (State Bar No. 158698)
Laura J. Portillo (State Bar No.186813)
4333 Park Terrace Dr., Suite 205
Westlake Village, Ca 91361
Ph: (818) 597-2992; Fax: (818) 597-299

**Corporate Disclosure Statement Pursuant to Fed.R.App.P. 26.1**

Betta Products, Inc. is a California corporation. Dana McCurnin, is an individual residing in the state of California and serving as the trustee of the Betta Products Litigation Trust. The bankruptcy First Amended Chapter 11, Plan of Reorganization was confirmed on May 17, 2004. *See* Bankruptcy Case Number 03-10925.

Brinkman Portillo, PC is a professional law corporation organized in the state of California.

Dated:    July 23, 2007                    Respectfully Submitted,

                                           BRINKMAN PORTILLO, PC
                                           Daren R. Brinkman
                                           Laura J. Portillo


                                           By: *Laura Portillo*
                                           Laura J. Portillo
                                           Attorneys for Appellants Betta
                                           Products, Inc. and Dana
                                           McCurnin, Trustee of the Betta
                                           Products Litigation Trust, and

# TABLE OF CONTENTS

I.      STATEMENT OF JURISDICTION .................................................................. 1

II.     STATEMENT OF THE ISSUES AND STANDARD OF REVIEW ....... 2

     A.      Statement of Issues.................................................................. 2

     B.      Standard of Review.................................................................. 4

III.    STATEMENT OF THE CASE ...................................................................... 4

     A.      Nature of the Case..................................................................... 5

IV.     RELEVANT FACTS ...................................................................................... 6

     A.      Course of Proceedings and Disposition of Bankruptcy Court ....... 6

          1.      The Bankruptcy ................................................................. 7

          2.      The Adversary Proceeding and Arbitration ............................. 8

     B.      The Bankruptcy Court's Findings ............................................. 12

V.      ARGUMENT ................................................................................................ 13

     A.      The Bankruptcy Court Erroneously Applied the Provisions
             of Section 10 of the Federal Arbitration Act Instead of the
             Provisions of the Cal. Code Civ. P. 1286.2. or Minn. Stat.
             Ann. § 572.19.1. .................................................................. 13

     B.      The Judgment Should be Reversed Because the Bankruptcy
             Court's Finding that the Panel of Arbitrators Acted Fairly
             and Properly in Refusing to Grant the Betta Parties A
             Continuance of the Arbitration is Clearly Erroneous Under
             Either the FAA, California or Nevada Statutes............................. 14

          1.      The Betta Parties Set Forth Evidence to Establish
                Sufficient Cause for Stay of the Arbitration Proceeding ...... 15

          2.      The Betta Parties Established that the Panel of
                Arbitrators Acted Improperly in Refusing to Grant A
                Continuance of the Arbitration ............................................. 16

          3.      The Betta Parties Were Substantially Prejudiced by the
                Arbitrators Improper Refusal to Grant a Continuance ....... 18

C.    The Judgment Should be Reversed Because the Bankruptcy Court's Finding that the Betta Parties' Made No Showing Sufficient to Create an Issue Regarding Whether the Panel of Arbitrators Exceeded Its Powers is Clearly Erroneous .......... 18

    1.    Since the Betta Parties Formally Withdrew Their Claims From the Arbitration the Minnesota Panel had no Claims to Arbitrate ............................................................... 20

    2.    The Panel of Arbitrators Exceeded Its Powers by Adjudicating the Breach of Contract Claims included in the Amended Complaint ....................................... 21

    3.    The Panel of Arbitrators Exceeded Its Powers by Violating the Federal Rules of Civil Procedure by Entering A Default Judgment at the Urging of A Party that Did Not Have any Asserted Claims ................................. 21

VI.    CONCLUSION ........................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215 (9th Cir. 2006)--------------4

*In re BCE West, L.P.*, 319 F.3d 1166 (9th Cir. 2003) --------------------------------4

*In re Harmon*, 250 F.3d 1240, 250 F.3d 1240 (9th Cir. 2001)------------------------4

*Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914 (9th

    Cir. 2003)----------------------------------------------------------------------------4

*Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649,

    651 (5th Cir. 1979)----------------------------------------------------------- 19

## STATE CASES

*California Faculty Assn. v. Superior Court*, 63 Cal.App.4th 935, 952

    (1998) ...................................................................................... 19

*County of Hennepin v. Law Enforcement Labor Services*, 527 N.W.2d 821

    (Minn. 1995) ........................................................................... 20

*Delta Lines, Inc. v. Int'l Brotherhood of Teamsters, Local 468*, 66

    Cal.App.3d 960, 966 (1977)....................................................... 19

*Jordan v. California Dept. of Motor Vehicles*, 100 Cal.App.4th 431, 443

    (2002) ...................................................................................... 19

*Lee v. Tysdal*, 163 Minn. 355, (Minn. Sup. Ct. 1925)............................................... 19

*Ramsey County v. AFSCME, Local 8,* 309 N.W.2d 785 (Minn. 1981) .................. 20

## FEDERAL STATUTES

28 U.S.C. § 1331 --------------------------------------------------------------------------1, 2

28 U.S.C. § 157 ------------------------------------------------------------------------------1

28 U.S.C. § 158 ------------------------------------------------------------------------------2

9 U.S.C. § 10 -------------------------------------------------------------------- 14, 19, 20

Fed. R. Bankr. P. 8001 ----------------------------------------------------------------------2

Fed. R. Bankr. P. 8002 ----------------------------------------------------------------------2

Fed. R. Bankr. P. 9023 ----------------------------------------------------------------------2

Fed. R. Civ. P. 59 ----------------------------------------------------------------------------2

Fed. R. Civ. Proc. 55 ------------------------------------------------------------------- 22

## STATE STATUTES

Cal. Code Civ. Proc. §1286.2........................................................................ 14, 19, 20

M.S.A. 572.19.1. ............................................................................................. 14, 20

# I. STATEMENT OF JURISDICTION

Plaintiff and Appellant, Betta Products, Inc. ("Betta") invoked the jurisdiction of the bankruptcy court under 28 U.S.C. §§ 157(b)(2) and 1334 on April 14, 2005. Appendix ("App."), p.1, ¶¶ 1-2. On or about November 4, 2005, Dana McCurnin, Trustee of the Betta Products Litigation Trust (the "Trust") (Betta and the Trust are hereafter collectively referred to as the "Betta Parties") was added to the arbitration action. App.p. 616, ¶ 2. On March 1, 2007, the Bankruptcy Court for the Northern District of California, Santa Rosa Division (hereafter "Bankruptcy Court") entered its Judgment Confirming Arbitration Award ("Judgment") in favor of Defendant and Appellee Distribution Systems and Services, Inc. ("DSS" or "Defendant" or "Appellant") against the Betta Parties and a separate order granting DSS' motion to confirm the Arbitration Award "Order". App.p.1049-1050; p.1051-1052. The Bankruptcy Court ordered that DSS shall have judgment and may recover against the Betta Parties $20,434.09 as set forth in the arbitration award dated November 16, 2006 ("Arbitration Award") and may recover its costs of action. *Id.* at 1050.

The Betta Parties timely filed a motion to amend the order confirming the arbitration award and, in the alternative, for an order staying enforcement of the judgment entered March 1, 2007, pursuant to Fed. R. Civ. P. 59(e). App.p.1094-

1103. *See also* Fed. R. Civ. P. 59(e).[1] The Betta Parties and DSS subsequently stipulated to staying collection efforts on the Judgment ("Stipulation") provided that the Betta Parties would take the Motion off calendar. App.p.1117-1120. The Bankruptcy Court approved Stipulation and on entered an order on March 3, 2007 ("Order") staying the enforcement of collection efforts of the Judgment pending the outcome of the remainder of the Betta Parties' claims asserted in their amended complaint filed in the Bankruptcy Court on February 22, 2007. The Bankruptcy Court's Order is final judgment or on the Betta Parties Motion and underlying the Judgment for purposes of this appeal. The Betta Parties timely filed a notice of appeal on May 11, 2007. App.p.1121-1126. *See also* Fed. R. Bankr. P. 8001(a); Fed. R. Bankr. P. 8002(a). This Court has jurisdiction pursuant to 28 U.S.C. §§ 158 (a), 1331.

## II.  STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

### A.  Statement of Issues

The Betta Parties are bringing this action to reverse the Bankruptcy Court's Judgment in favor of DSS confirming the Arbitration Award and to enter judgment in favor of the Betta Parties vacating the Arbitration Award. The questions on appeal are as follows:

---

[1]  Fed. R. Civ. P. 59 is incorporated into bankruptcy cases by Fed. R. Bankr. P. 9023.

1.      Whether the Bankruptcy Court erred in deciding to grant DSS'
Motion to Confirm Arbitration Award and Enter Judgment;

2.      Whether the Bankruptcy Court erred in deciding to deny the Betta
Parties' Motion to Vacate or Set Aside Arbitration Award;

3.      Whether the Bankruptcy Court properly entered the Judgment dated
March 1, 2007;

4.      Whether the Bankruptcy Court erred by failing to vacate the
Arbitration Award under California Code of Civil Procedure § 1286;

5.      Whether the Bankruptcy Court erred by failing to vacate the
Arbitration Award under Minnesota Statutes Annotated § 572.19.1.(1)-(4);

6.      Whether the panel of arbitrators from the American Arbitration
Association ("Panel of Arbitrators") exceeded their powers by entering default
judgment against the Betta Parties in favor of a party with no asserted
counterclaims;

7.      Whether the Panel of Arbitrators exceeded their powers by holding an
evidentiary hearing and issuing an award on claims that had been withdrawn from
arbitration, under either California or Minnesota laws;

8.      Whether the Panel of Arbitrators exceeded their powers by holding an
evidentiary hearing and issuing an award for issues that had been withdrawn or
voluntarily dismissed and abandoned, under either California or Minnesota laws;

9.      Whether the Panel of Arbitrators should have continued the evidentiary hearing on the breach of contract claims, as requested by the Betta Parties, under either California Code of Civil Procedure 1286.2(a)(5) or Minnesota Statutes Annotated § 572.19.1.(4);

10.      Whether the Panel of Arbitrators acted in bad faith in failing to grant a continuance of the evidentiary hearing.

**B.    <u>Standard of Review</u>**

The District Court reviews a bankruptcy court's conclusions of law de novo and its factual findings for clear error. *In re S. Cal. Plastics, Inc.*, 165 F.3d 1243, 1245 (9th Cir. 1999); *In re Lazar*, 83 F.3d 306, 308 (9th Cir. 1996); *In re Harmon*, 250 F.3d 1240, 250 F.3d 1240, 1245 (9th Cir. 2001). Mixed questions of law and fact are reviewed de novo.  *In re BCE West, L.P.*, 319 F.3d 1166, 1170 (9th Cir. 2003).

### III.    STATEMENT OF THE CASE

Because relevant facts of this case involve, to a substantial degree, the course of the proceedings of the case, Appellant has incorporated the course of the proceedings and disposition of the bankruptcy court within the "Relevant Facts" Section below.

A.  **Nature of the Case**

The relevant portion of this case on appeal involves a situation where a Minnesota Company, DSS, and a Minnesota Panel of Arbitrators were determined to force arbitration of claims which the Betta Parties properly withdrew from the arbitration.

After forcing the Betta into arbitration, DSS, just two months prior to the arbitration hearing, filed a motion with the AAA arguing, among other things, the Betta Parties' claims for breach of bailment and conversion could not be arbitrated.[2]  During the discovery process and before DSS filed its motion, the Betta Parties obtained information which supported additional claims for fraud, negligent misrepresentation and negligence.  The Betta Parties' tort claims provided them with a more inclusive set of remedies than the breach of contract claims.

Based on DSS' motion it was clear that if the Betta Parties wished to pursue their tort claims they would have to do so in the Bankruptcy Court.  Accordingly, the Betta Parties filed a motion to amend their complaint in the Bankruptcy Court to include their tort claims.  After the motion was granted the Betta Parties made repeated requests to the Panel of Arbitrators to stay the arbitration hearing pending

---

[2]  The DSS withdrew its arguments that the Betta Parties' breach of bailment and conversion claims could not be arbitrated after a hearing in the Bankruptcy Court on October 13, 2007 wherein the Bankruptcy Court granted the Betta Parties leave to amend the adversary complaint to include the causes of action along with additional claims in tort and severed the newly amended tort claims from the breach of contract claims in the original complaint.

the outcome of the court action on the newly amended claims and even filed with

the AAA a formal withdrawal of its arbitrable breach of contract claims.  The Betta

Parties also sought the assistance of the Bankruptcy Court via a motion for

voluntary withdrawal of its breach of contract claims and a motion for an interim

stay of the arbitration.  However, the Santa Rosa Bankruptcy Court was due to

Judge Jaraslovky's vacation and was unable to hear the Betta Parties' motions until

November 17, 2006, the last day of the scheduled arbitration.

Despite the Betta Parties repeated request for a continuance of the

arbitration, the formal withdrawal of their claims from the arbitration and the

pending motions before the Bankruptcy Court, the Panel of Arbitrators proceeded

with the arbitration on November 13, 2006 without the Betta Parties and entered an

Award in favor of DSS even though DSS had asserted no counterclaims in the

arbitration.  The conduct of the DSS and the Panel of Arbitrators provides evidence

sufficient to establish grounds for vacating the Arbitration Award.

## IV.    RELEVANT FACTS

### A.    Course of Proceedings and Disposition of Bankruptcy Court

Betta and DSS entered into the agreement dated May 1, 1996

("Agreement").  App.p.118-131.  The Agreement provided that DSS was obligated

to setup and maintain a finished goods warehouse and product shipment operation

and to keep records of the goods Betta delivered to DSS and of the goods Betta

shipped out of their warehouse.  App.p.119, §§ 2(a)(i)(2)-(6), p.120 §§ 2(a)(iii)-(iv).

In July 2003, Betta abandoned inventory in DSS's warehouse in which Wells Fargo Bank held a security interest.  DSS was instructed by both Betta and DSS to segregate the abandoned ("Pre-Petition") inventory from the remaining ("Post-Petition") inventory and to hold it for Wells Fargo.  When Wells Fargo requested release of the inventory to its buyer, the amount of inventory turned over by DSS was short.  DSS failed turn over the additional inventory upon Wells Fargo's request.

In May 2004, Plaintiff terminated the Agreement and moved its Post-Petition inventory from DSS's warehouse.  DSS failed to turnover all of Betta's inventory just as it did with Wells Fargo.  On July 20, 2004, Betta received a Notice of Warehouseman's Lien Foreclosure Sale notifying it that either Betta or Wells Fargo may have an interest in inventory formerly owned by Betta that was to be sold via a private sale due to a default in payment of storage fees.  Some of this inventory was sold in a private sale.

## 1. **The Bankruptcy**

Betta filed a voluntary Chapter 11 petition with this Court on April 15, 2003 (the "Petition Date").  App.p.615, ¶ 2.  The Chapter 11 Plan (hereafter "Plan") was confirmed on May 17, 2004.  App.p.615, ¶ 3.  In the Plan, the

Debtor reserves the rights to pursue "claims and rights of set off against Distribution Systems & Services Corporation arising from the warehousing agreement dated May 1, 1996, payments, overcharges, lost and damaged goods and claims assigned pursuant to the Compromise Agreement." Pursuant to the Plan and Compromise Agreement Wells Fargo assigned its claims with respect to abandoned inventory back to Betta. Betta is also the beneficiary of the claims because there is no provision in the Plan to allocate the proceeds from the claims to another entity. The Plan also gave Betta any and all recovery from the successful litigation of the claims. A final decree was entered and this case was ordered closed February 28, 2006.

## 2. **The Adversary Proceeding and Arbitration**

On April 14, 2005, Betta Products, Inc., through its former counsel, commenced the adversary proceeding for turnover of inventory and for damages incurred by DSS' breach of the Agreement. App.p.1-4. Dana McCurnin and the Trust were not a party to the adversary proceeding at that time. *Id.* DSS filed a motion to compel arbitration and to stay the court action. App.p.11-37. On May 11, 2005, the Bankruptcy Court entered an order granting DSS' motion to compel and stay the action. Brinkman Portillo, PC subsequently substituted in as counsel on October 21, 2005. Ap.p.48-51.

8

On or about October 31, 2005, the Betta Parties filed and served on DSS a demand for arbitration.  App.p.615, ¶ 10; p.662.  On November 4, 2006, Betta amended the Demand for Arbitration to include the Trust.  App.p. 616, ¶ 11.  A panel of three arbitrators were selected by the Parties.  App.p. 616, ¶ 12.  On March 27, 2006, the Betta Parties filed a specification of claims against DSS with the AAA enumerating its claims including alternative theories of relief for conversion and bailment.  App.p.616, ¶ 13; p.718-729.  The arbitration hearing was scheduled to occur the entire week beginning November 13, 2006.  During the discovery process, the Betta Parties obtained information supporting additional claims in tort including fraud, negligent misrepresentation and negligence.  On September 15, 2006, DSS filed with the AAA a motion to dismiss all or part of Betta's claims ("Motion to Dismiss") in which it argued that the Betta's claims for conversion and bailment were not within the scope of the arbitration agreement. App.p.75, ln.20-25.  DSS subsequently withdrew its arguments that the conversion and breach of bailment claims were could not be arbitrated when the Bankruptcy Court reserved jurisdiction over the claims.  The Panel of Arbitrators set the hearing on the remainder of DSS' Motion to Dismiss for November 13, 2006 in conjunction with the arbitration.  App.p.237, ¶ 7.

In realization of the fact that DSS was arguing that DSS' tort claims were not arbitrable, Betta and the Trust jointly filed a motion with the Bankruptcy Court

for modification of the stay and for leave to amend the adversary complaint

("Motion to Amend") to include causes of action for breach of bailment,

conversion, fraud, negligent misrepresentation and negligence.   App.p.66-113.

The Bankruptcy Court entered an order on October 20, 2006, granting Betta's

Motion to Amend and severing the claims in the amended complaint from the

breach of contract claims in the original complaint.  App.p.168, ¶ 1.  The

Bankruptcy Court also ordered that the breach of contract claims in the original

contract could "proceed in arbitration as the AAA or its panel of arbitrators deems

proper, including without limitation, any arguments for a stay or suspension of that

proceeding."  App. p.169, ¶ 3.

On October 17, 2006, the Betta Parties sought from the AAA and Panel of

Arbitrators a stay or continuance of the arbitration proceedings pending the

outcome of the contract action. App.p. 239, ¶ 25; p.251-253.  On October 23, 2006,

the Betta Parties, through their counsel, filed with the AAA a formal request for

withdrawal of its arbtirable breach of contract claims from arbitration.  App.p. 239-

240, ¶ 26; p.255-256.  The Betta Parties filed a motion for voluntary dismissal of

its arbitrable breach of contract claims from the court action. App.p.214-222.[3]

---

[3]  The initial motion for voluntary dismissal of breach of contract claims was filed on October
26, 2007.  The Betta Parties set the hearing for December 1, 2006 because the Bankruptcy Court
was on vacation in November and could not hear the matter before arbitration was scheduled to
begin on November 13, 2007.  The Betta Parties subsequently withdrew the initial motion for
voluntary dismissal before December 1, 2006 considering that the arbitration had already
occurred.  The Betta Parties subsequently filed a new motion for voluntary dismissal of breach of

Because the Court was on vacation until the week of the November 13, 2006, the Betta Parties had to set the hearing for December 1, 2006, after the arbitration was scheduled to occur. Despite the Betta Parties' requests for a continuance and the formal withdrawal of their claims from the arbitration, the Panel of Arbitrators proceeded with the arbitration on November 13, 2007 without the Betta Parties. The Panel of Arbitrators issued an arbitration award dated November 16, 2007 ("Arbitration Award") denying the Betta Parties' formal request for withdrawal of its claims from the arbitration and finding no evidence in the record to establish the Betta Parties' breach of contract claims. Accordingly, the Arbitration Award holds that the Betta Parties take nothing on their breach of contract claims and awards DSS $20,434.09 in arbitration fees and expenses. App.p.790, ¶ 2.; p.791, ¶ 3.

At the hearing on the Betta Parties' Motion for Interim Stay on November 17, 2007, the Court found that since the arbitration had already occurred, there was nothing for the Court to stay. App.p.606, ln. 20-24. Accordingly, the Bankruptcy Court denied the Motion for Interim Stay. App.p.608, ln.4-6.

On December 4, 2006, DSS filed a motion to confirm the arbitration award ("Motion to Confirm"). App.p.610-834. The Betta Parties filed a motion to vacate the Arbitration Award ("Motion to Vacate") and renewed their motion for voluntary dismissal of the contract claims ("Motion for Voluntary Dismissal") on

---

contract claims on December 29, 2006 in conjunction with its Motion to Vacate or Set Aside Arbitration Award.

December 29, 2006.  App.p.843-915; p.916-928.  The Betta Parties also filed an opposition to DSS' Motion to Confirm on January 12, 2007.  App.p.969-991.  The Motion to Confirm, the Motion to Vacate and the Motion for Voluntary Dismissal were heard by the Bankruptcy Court on January 26, 2007.

**B.    The Bankruptcy Court's Findings**

On February 15, 2007, the Bankruptcy Court entered its Memorandum on Motions Related to Arbitration "Memorandum".  App.p.1026-1030.  In the Memorandum, the Bankruptcy Court made the following findings which are the subject of this appeal:

1.  The provisions of 9 U.S.C. §§ 9-10 applied to the arbitration and the Arbitration Award and not the provisions of the California Code of Civil Procedure 1286 or Minnesota Statutes Annotated 572.19;

2.  the Betta Parties made no showing to create an issue as to whether the Arbitration Award was procured by corruption, fraud or undue means;

3.  the Betta Parties made no showing to create an issue as to whether there was evident partiality or corruption among the Panel of Arbitrators;

4.  the Betta Parties made showing to create an issue as to whether the arbitrators exceeded their powers; and

5.  the Panel of Arbitrators acted fairly and properly in refusing to continue the arbitration.

# V. ARGUMENT

The Bankruptcy Court abused its discretion in this case by denying the Betta Parties' Motion to Vacate and granting DSS' Motion to Confirm because the Bankruptcy Court's Memorandum, Judgment and Order were based on multiple errors of law and on clearly erroneous findings of fact which are discussed in detail below. Based on these errors, the District Court should enter an order reversing the Bankruptcy Court's Judgment and Order in favor of DSS and enter an order or judgment granting the Betta Parties Motion to Vacate or, in the alternative, remand the Judgment for further review.

### A. The Bankruptcy Court Erroneously Applied the Provisions of Section 10 of the Federal Arbitration Act Instead of the Provisions of the Cal. Code Civ. P. 1286.2. or Minn. Stat. Ann. § 572.19.1.

Since the subject matter of the arbitration involves claims under state law, the governing law would be the state statutes from which the claims derive. Since the written contract between the parties states only that Minnesota substantive law shall be used in governing the agreement between the parties but does not mention procedural law, California procedural law controls, especially because the original adversary proceeding was filed in California and Betta is a California corporation. App.p.676, ¶ 22(d). However, even if Minnesota procedural law is used, both the California and Minnesota statutes generally agree on the grounds to vacate an arbitration award, and they both require dismissal when a court determines that

grounds exist.  Therefore, the Court erroneously applied the provisions of 9 U.S.C.

§ 10 in determining whether to confirm or vacate the Arbitration Award.  The

Betta Parties submit that if the Bankruptcy Court had properly applied the pertinent

provisions of the California Code of Civil Procedure § 1286.2. or the Minnesota

Statutes Annotated § 572.19.1., which compel a reviewing court to vacate an

arbitration award when the grounds are met, the Bankruptcy Court would have

vacated the Arbitration Award.

**B. The Order and Judgment Should be Reversed Because the Bankruptcy Court's Finding that the Panel of Arbitrators Acted Fairly and Properly in Refusing to Grant the Betta Parties A Continuance of the Arbitration is Clearly Erroneous Under Either the FAA, California or Nevada Statutes**

Pursuant to the FAA, a court may vacate an arbitration award where the

arbitrators were guilty of "misconduct in refusing to postpone a hearing, upon

sufficient cause shown… or of any other misbehavior by which the rights of any

party are prejudiced."  9 U.S.C. § 10(a)(4) .  Similarly, both Cal. Code Civ. Proc.

§1286.2.(a)(5) and M.S.A. 572.19.1.(4) <u>require</u> a court to vacate an arbitration

award where the rights of a party were substantially prejudiced by the refusal of

the arbitrators to postpone the hearing upon a showing of sufficient cause.  As

discussed *infra*, The Betta Parties established sufficient cause, misconduct or

misbehavior through the Arbitration Panel's bad faith, and substantial prejudice

allowing (under the FAA) or requiring (under the CCCP or M.S.A.) a court to

vacate the Arbitration Award.  Accordingly, the District Court should reverse the

Bankruptcy Court's Judgment .

### 1.  The Betta Parties Set Forth Evidence to Establish Sufficient Cause for Stay of the Arbitration Proceeding

The Betta Parties established sufficient evidence to show that the Panel of

Arbitrators acted improperly in refusing to grant a continuance of the arbitration

hearing.  During the discovery process the Betta Parties obtained information that

changed the essence of this case from breach of contract to DSS' tortious conduct.

Once it became apparent that the Panel of Arbitrators could only adjudicate a

portion of the Betta Parties' claims, the Betta Parties successfully sought to

proceed on their amended complaint in the Bankruptcy Court.  Having fully

reviewed the remaining severed contract actions, the Betta Parties requested a stay

of the arbitration proceedings and subsequently formally withdrew its claims from

the Panel of Arbitrators.  It was a waste of the assets of the bankruptcy estate of the

Betta Parties to proceed with two separate hearings in the same case, especially in

light of the fact that the remedies available in tort were more inclusive than the

remedies in the contract action.  Granting a stay or continuance would not have

substantially prejudiced DSS because its efforts in developing its case could be

used in the court action.

Sufficient cause for a stay also existed on the basis that there was a dispute

between the parties regarding the nature of the Bankruptcy Court's orders dated

July 11, 2005 and October 20, 2006.  The dispute concerned the nature of the rulings and whether the Bankruptcy Court compelled the Betta Parties to proceed with their breach of contract claims in light of their formal withdrawal of the claims.  Since the arbitrability of claims is clearly an issue for the Court to determine, and Betta's Motion to Dismiss was pending before the Court, it was incumbent upon the Panel of Arbitrators to defer to the Court to allow it resolve the issue as required by federal law.

### 2. The Betta Parties Established that the Panel of Arbitrators Acted Improperly in Refusing to Grant A Continuance of the Arbitration

The facts also clearly establish the Betta Parties' contention that the Panel of Arbitrators acted in bad faith in refusing to grant the Betta Parties' requests for a continuance.  The facts indicate that the Panel of Arbitrators' decision to deny the Betta Parties' requests for a continuance was motivated by the Panel's desire to accumulate fees.  In light of the substantial change in nature of the case from breach of contract to tortious conduct and the issue concerning the Bankruptcy Court's orders of July 11, 2005 and October 20, 2006, the Panel of Arbitrators should have granted the Betta Parties withdrawal of its claims or, at a minimum, continue the arbitration pending.  However, if the Panel were to allow the Betta Parties to withdraw their claims from the arbitration, the Panel could not bill for the arbitration.

On October 18, 2007, the Panel, through the AAA, requested a hearing on the issue of the Betta Parties' request for a continuance of the arbitration. The Panel directed that the hearing could occur on several dates all of constituted less than ten days notice required by Commercial Arbitration Rule R-22. App.p.766; p.816. The hearing was ultimately set for October 27, 2006. On October 26th, counsel for the Betta Parties informed the AAA that due to a pressing family matter, the lead attorney was not available for the hearing on the following day and that the Betta Parties would be prejudiced if the Panel took any steps to proceed without counsel for the Betta Parties. App.p.263. The Panel decided to proceed with the hearing without counsel for the Betta Parties and determined that the arbitration would proceed on November 13, 2006.

The Arbitration Panel's improper justification of its decision to deny the Betta Parties' requests provides further evidence of the Panel's overriding motivation to protect its ability to accumulate billable hours. In the Arbitration Award, the Panel states that the purpose of the hearing on October 27, 2006, was to "address Claimants'" request for a postponement and remaining aspects of DSS' motion to dismiss." App.p.784, ln.21-23; p.785, ln.1-2. The Panel further states that on the morning of October 27, 2006, Betta requested that the hearing scheduled for later that day be deferred until after December 1, 2006. App.p.785, ln.13-17. Despite this request, the Panel justified, in part, its decision to deny a

continuance upon "Claimants having failed to advise the Minnesota Panel whether it was maintaining its request for a postponement." App.p.788, ln.9-11. This statement is clearly false and not in any way related to the real reason for the Panel's denial of the Betta Parties' request.

### 3. The Betta Parties Were Substantially Prejudiced by the Arbitrators Improper Refusal to Grant a Continuance

The prejudice suffered the Betta Parties and Betta's creditors from the Panels denial of the Betta Parties' request for a continuance far surpasses any supposed prejudice to DSS from granting the request. If the Panel had properly stayed or continued the arbitration and the Court dismissed Betta's claims, DSS would no longer have had reason to defend itself in the arbitration. In addition, any work that was done by DSS' defense attorneys could be used in the court action. Even if the Court failed to dismiss Betta's claims, the arbitration would only have been delayed for a few weeks. On the other hand, Betta's claims were decided against their will by Panel which had already disregarded the AAA's own rules in order to protect their fees.

### C. The Order and Judgment Should be Reversed Because the Bankruptcy Court's Finding that the Betta Parties' Made No Showing Sufficient to Create an Issue Regarding Whether the Panel of Arbitrators Exceeded Its Powers is Clearly Erroneous

The Bankruptcy Courts summarily dismissed the Betta Parties' claim that the Panel of Arbitrators exceeded their powers on the grounds that the Betta Parties

"made no showing sufficient to create an issue…" App.p.1028, ln.16-23. This finding is clearly erroneous because the Betta Parties withdrew their claims from the Arbitration and because the Panel the improperly adjudicated non-existing claims and issued an award for DSS despite DSS' failure to assert any counterclaims.

An arbitrator exceeds his powers under both the 9 U.S.C. § 10(a)(4) and Cal. Code Civ. Proc. § 1286.2. , when he acts in a manner not authorized by the contract or by law or decides an issue that was not submitted to arbitration. *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649, 651 (5th Cir. 1979)(holding arbitration panel exceeded its powers by awarding damages for charter hire where charter hire was not an issue in the arbitration); *Delta Lines, Inc. v. Int'l Brotherhood of Teamsters, Local 468*, 66 Cal.App.3d 960, 966 (1977)(vacating arbitration award where the arbitrator was outside the scope of the submission agreement.) *See California Faculty Assn. v. Superior Court*, 63 Cal.App.4th 935, 952 (1998).

Similar to California law, Minnesota law provides that "an arbitration award will be set aside only when the objecting party clearly exceeded the powers granted to them in the arbitration agreement." *Lee v. Tysdal*, 163 Minn. 355, (Minn. Sup. Ct. 1925) (panel of arbitrators exceeded its powers by awarding plaintiff wages in instead of deciding submitted issue of whether plaintiff was entitled to an

accounting of partnership assets.); *County of Hennepin v. Law Enforcement Labor Services*, 527 N.W.2d 821 (Minn. 1995) (arbitrator exceeded the scope of his authority in deciding a constitutional issue)(citing *Ramsey County v. AFSCME, Local 8*, 309 N.W.2d 785, 789-90 (Minn. 1981).

### 1. Since the Betta Parties Formally Withdrew Their Claims From the Arbitration the Minnesota Panel had no Claims to Arbitrate

Although DSS filed an answer to the adversary complaint, it never alleged any counterclaims in the court action or the arbitration. The Betta Parties subsequently withdrew all of their claims from the arbitration on October 23, 2006, pursuant to the refund and cancellation policy referenced in the AAA's written procedural requirements on its invoices and website.[4]  App.p.534, ¶ 15; p.539-542. As a result of the Betta Parties' withdrawal, there were no longer any claims arising under or out of the arbitration agreement for the Minnesota Panel to arbitrate.  Because the Panel of Arbitrators adjudicated non-existing claims, the Panel clearly exceeded its authority under the 9 U.S.C. § 10(a)(4) , Cal. Code Civ. Proc. § 1286.2.(a)(4)  and M.S.A. §572.19.1.(3)  and had no power to issue an award.

---

[4]  See the "Administrative Fees" Section of the AAA's website at http://www.adr.org/sp.asp?id=22440#R1. These procedures provide for partial or complete refunds where the case is "settled or withdrawn." Clearly the rules contemplate unilateral withdrawal separate and apart from consensual settlement.  If the only way to get out of arbitration were through the settlement of a case, the procedures would not provide for refunds in situations involving withdrawal.

### 2. The Panel of Arbitrators Exceeded Its Powers by Adjudicating the Breach of Contract Claims included in the Amended Complaint

The Bankruptcy Court's order dated October 20, 2006 states that "the original contract claims not contained in the Amended Complaint may proceed in arbitration as the AAA or its panel of arbitrators deems proper including without limitation, any arguments for a stay or suspension of that proceeding." App.p.169, ¶ 3. Thus, the Bankruptcy Court confined the jurisdiction of the arbitrators solely to the breach of contract claims in the original complaint filed in the Bankruptcy Court on April 14, 2005. App.p.1-4. The Arbitration Award makes clear that it applies to all the breach of contract claims in the Betta Parties' Specification of Claims. App.p.790-1, ¶ 2. Because the Arbitration Award, by its own terms, applies to the breach of contract claim assigned to the Betta Parties by Wells Fargo which is included in the Amended Complaint (as the First Claim for Relief) the Panel of Arbitrators exceeded its jurisdiction and its powers by adjudicating a claim and the related issues which were not submitted to the Panel for adjudication. App.p.1037-1038, Section III.

### 3. The Panel of Arbitrators Exceeded Its Powers by Violating the Federal Rules of Civil Procedure by Entering A Default Judgment at the Urging of A Party that Did Not Have any Asserted Claims

In addition to arbitrating non-existing claims and issue, the Panel of Arbitrators violated the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 55, made applicable to bankruptcy proceedings by Federal Rule of

Bankruptcy Procedure 7055, states that a default judgment can only be entered against "a party against whom a judgment for affirmative relief is sought." *See* Fed. R. Civ. Proc. 55(a). This rule is available only to plaintiffs, or other parties who assert a claim in the proceeding. The Panel of Arbitrators completely ignored this rule and illegally entered an award of default judgment in favor of DSS, a party who has <u>never</u> asserted a claim in this case. Moreover, the Panel's conduct was especially improper as against the Trust because the Trust was not even a party in the original complaint and the Bankruptcy Court had no jurisdiction over the Trust and DSS had no counterclaims against the Trust.

It is completely contrary to any established law for the Minnesota Panel to hold an evidentiary hearing without the Betta Parties' participation and allow Defendant DSS to "prove up" claims that it had never asserted. The Minnesota Panel's attempt at granting both a default and default judgment in favor of Defendant DSS is unsupported by the Federal Rules, and is clearly erroneous award.

///

///

///

///

///

22

## VI.   CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Judgment and Order in favor of DSS are premised on an improper application of the Federal Arbitration Act instead of the applicable provisions of the California Code of Civil Procedure § 1286 or the Minnesota Statute Annotated 572.19.1. and on clearly erroneous findings of fact.  Because the Betta Parties have properly established grounds under each of the foregoing statutes, the District Court should reverse the Bankruptcy Court's Judgment and Order and enter an order or judgment granting the Betta Parties' motion to vacate the Arbitration Award.

Dated: July 23, 2007                    BRINKMAN PORTILLO, PC


                                        _Laura Portillo_
                                        Laura J. Portillo
                                        Attorneys Betta Products, Inc. and
                                        Dana McCurnin, Trustee of the Betta
                                        Products Litigation Trust

# <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

**1.**    This brief complies with the type-volume limitation of <u>Fed. R. App. P.</u> <u>32(a)(7)(B)</u> because:

[**X** ] this brief contains 5,246 words and 465 lines, excluding the parts of the brief exempted by <u>Fed. R. App. P. 32(a)(7)(B)(iii)</u>, *or*

[  ] this brief uses a monospaced typeface and contains [  ] lines of text, excluding the parts of the brief exempted by <u>Fed. R. App. P. 32(a)(7)(B)(iii)</u>.

**2.**    This brief complies with the typeface requirements of <u>Fed. R. App. P.</u> <u>32(a)(5)</u> and the type style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because:

[ **X** ] this brief has been prepared in a proportionally spaced typeface using MS Word word processing software in 14 point Times New Roman font, *or*

[  ] this brief has been prepared in a monospaced typeface using [  ] with [ ].

Dated:  July 23, 2007                  BRINKMAN PORTILLO, PC

*Laura   Portillo*

Laura J. Portillo
Attorneys for Betta Products, Inc. and
Dana McCurnin, Trustee of the Betta
Products Litigation Trust

