# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## No: CV 07-02661 VRW

---

Betta Products, Inc. and Dana McCurnin, Trustee of the Betta Products Litigation Trust,

Plaintiffs, Appellants,

v.

Distribution Systems and Services, Inc.

Defendant, Appellee.

---

## APPELLEE'S BRIEF AND ADDENDUM

---

Richard W. Abbey, Esq. SBN 53039
Mitchell B. Greenberg, Esq. SBN 114878
Rachel K. Nunes, Esq. SBN 172525
Abbey, Weitzenberg, Warren & Emery
100 Stony Point Road
Ste. 200
PO Box 1566
Santa Rosa, CA  94502-1566
Telephone: (707) 542-5050

James Anton Beitz, MN  ATTY. ID No. 6233
Hagerty Johnson & Beitz P.A.
701 Fourth Avenue, South, Suite 700
Minneapolis, Minnesota 55415
Telephone: (612) 349-9000
*Pro Hac Vice*

Attorneys for Defendant, Appellee

## CORPORATE DISCLOSURE STATEMENT

Distribution Systems and Services, Inc. is a privately held Minnesota corporation, whose present name is Distribution Alternatives, Inc. It does business as "DSS." It does not have any parent corporation which owns ten per cent or more of its stock.

# TABLE OF CONTENTS

Corporate Disclosure Statement...............................................................i

Table of Authorities...........................................................................iv

Jurisdictional Statement.......................................................................1

Statement of Issues............................................................................1

Standard of Review............................................................................1

Statement of the Case.........................................................................2

Statement of Facts............................................................................2

Summary of the Argument....................................................................8

Argument.....................................................................................10

I.    THE BANKRUPTCY COURT APPLIED THE CORRECT LAW
    IN CONFIRMING THE ARBITRATION AWARD......................10

    A.    California Law Has No Application to this Case....................10

    B.    The Bankruptcy Court Correctly Applied Federal Law............12

    C.    Confirmation of the Arbitration Award Was Correct under
        the FAA and the MUAA...............................................12

II.   THE ARBITRATORS FOLLOWED THE BANKRUPTCY COURT'S
    ORDERS AND ACTED WITHIN THE POWERS GRANTED
    TO THEM....................................................................14

    A.    The Panel Did Not Exceed its Authority............................14

    B.    The Panel Did Not Enter a Default Judgment......................18

    C.    The Result Would Have Been the Same under the MUAA..........20

     D.     The Panel Properly Addressed Matters Submitted to It…………..……21

II.   THE ARBITRATORS WERE NOT GUILTY OF
     MISCONDUCT IN REFUSING BETTA'S AND THE TRUSTEE'S
     REQUEST FOR A POSTPONEMENT…………………………………...21

Conclusion…………………………………………………………………………..25

# TABLE OF AUTHORITIES

## <u>Federal Cases</u>

*A.G. Edwards, Inc. v. McCullough*
967 F.2d 1401 (9th Cir. 1992)……………………………………………2, 13, 16, 17, 23

*Blue Mountain Constr. Co. v. Werner*
270 F. 2d 305 (9th Cir. 1959)……………………………………………………...18

*Burchell v. Marsh*
58 U.S. 344 (1854)…………………………………………………………………...15

*CT Shipping Ltd. v. DMI (USA) Ltd.*
774 F. Supp. 146 (S.D. N.Y. 1991)………………………………………...…12, 24

*C & L Enter., Inc. v. Citizen Band of Potawatomi Indian Tribe of Oklahoma*
532 U.S. 411 (2001)………………………………………………………………11

*Ceco Concrete Constr. v. JT Schrimsher*
792 F. Supp. 109 (N.D. Ga. 1992)…………………………………………………..24

*Certain Underwriters at Lloyds, London v. Argonaut Ins. Co.*
264 F. Supp.2d 926 (N.D. Cal. 2003)…………………………………………...13, 17

*Conoco, Inc. v. Oil, Chem., & Atomic Workers' Int'l Union*
26 F. Supp.2d 1310 (N.D. Okla. 1998)…………………………………………...2, 13

*Continental Materials Corp. v. Gaddis Min. Co.*
306 F.2d 952 (10th Cir. 1962)……………………………………………………15

*Coutee v. Barington Capital Group*
336 F.3d 1128 (9th Cir. 2003)…………………………………………...1, 14, 17, 20

*DVC-JPW Investors v. Gersham*
5 F.3d 1172 (8th Cir. 1993)……………………………………………………...9, 15

*El Dorado School dist. No. 15 v. Continental Cas. Co.*
247 F.3d 843 (8th Cir. 2001)……………………………………………19, 23, 24

*Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*
933 F.2d 1481 (9th Cir 1991)................................................13, 14, 17, 20

*Erie R. Co. v. Tompkins*
304 U.S. 64 (1938)....................................................................11

*Foster v. Turley*
808 F.2d 38 (10th Cir. 1986)........................................................23

*French v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*
784 F.2d 902 (9th Cir. 1986)..........................................................2

*Hanna v. Plumer*
380 U.S. 460 (1965); 28 U.S.C. §2702 (a)........................................11

*Johnstone v. Comm'r.*
76 F.2d 55 (9th Cir. 1935)...........................................................21

*Kamiyama v. Carr*
44 F.2d 503 (9th Cir. 1930)..........................................................21

*Liability Sec. Corp. v. Fetcho*
114 F. Supp.2d 1319 (S.D. Fla. 2000) .............................................24

*Lundgren v. Freeman*
307 F.2d 104 (9th Cir. 1962) ........................................................16

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*
708 F.2d 1458 (9th Cir. 1983) .........................................................8

*Rossi v. Trans World Airlines Inc.*
507 F.2d 404 (9th Cir. 1974) ...................................................13, 15

*San Martine Companie De Navegacion, S.A. v. Saguenay Terminals Ltd.*
293 F.2d 796 (9th Cir. 1961) .........................................................15

*Schoenduve Corp. v. Lucent Tech., Inc.*
442 F.3d 727 (9th Cir. 2006) ...........................................1, 2, 9, 15, 16

*Southland Corp. v. Keane*
465 U.S. 1, 11 (1984) ……………………………………………………...11

*Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*
607 F.2d 649 (5th Cir. 1979) …………………………...……………17, 18

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*
363 U.S. 593 (1960) ……………………………………….…………17

*Wayman v. Southard*
23 U.S. (10 Wheat) 1 (1825) …………………………….………………11

**State Cases**
*Altimus v. Hyundai Motor Co.*
578 N.W.2d 409 (Minn. Ct. App. 1998) ……………………………………..25

*Benedict v. Benedict*
361 N.W.2d 429 (Minn. Ct. App. 1985) …………………………………...21

*Churchill Envtl. & Indus. Equity Partners, L.P. v. Ernst & Young, L.L.P.*
643 N.W.2d 333 (Minn. Ct. App. 2002) ………………….……………9, 11, 12

*Combined Ins. Co. of America v. Bode*
247 Minn. 458 (1956) …………………………………………………..11

*EEC Property Co. v. Kaplan*
578 N.W.2d 381 (Minn. Ct. App. 1998) ……………………………………...21

*Hilltop Condos. Inc. v. Lou Park Apts.*
324 N.W. 2d 236 (1982) ……………………………….……………2, 13, 14

*Hunter, Keith Ind., Inc. v. Piper Capital Management, Inc.*
575 N.W.2d 850 (Minn. Ct. App. 1997) ……………………………………...14

*Liberty Mut. Ins. Co. v. Sankey*
605 N.W.2d 411 (Minn. Ct. App. 2000) ……………………………..…..20

*McQuaid Market House Co. v. Home Ins. Co.*
147 Minn. 254, 180 N.W. 97 (1920) ……………………….……………13

*Milliken & Co. v. Eagle Packaging, Inc.*
295 N.W.2d 377 (Minn. 1980) ...................................................................11

*Office of State Auditor v. Minnesota Ass'n of Prof'l Employees*
504 N.W.2d 751 (Minn. 1993) .............................................................20, 25

*Onvoy, Inc. v. Shal, L.L.C.*
669 N.W.2d 344 (Minn. 2003) ................................................................12

*State v. Joseph*
636 N.W. 322 (Minn. 2001) ...................................................................19

**Federal Statutes**
Federal Arbitration Act, 9 U.S.C. § et seq..........................8, 9, 10, 12, 22, 24

9 U.S.C. § 10(a)(3) ........................................................................10, 24

28 U.S.C. § 158(a) ...............................................................................1

28 U.S.C. § 2702(a) ...........................................................................11

**State Statues**
Minn. Stat. § 572.18.............................................................................9

**Other Authority**
AAA Commerical Arbitration Rules and Mediation Procedures...........5, 10, 19,
                                                                    20, 22, 23, 24

Federal Arbitration Act, 9 U.S.C. §1..................................................8, 12

Minnesota Uniform Arbitration Act, Minn. Stat. § 572.08..................9, 12, 21

## JURISDICTIONAL STATEMENT

This Court has jurisdiction of this matter under 28 U.S.C. §158(a).

## STATEMENT OF ISSUES

1.    Whether the bankruptcy court applied the correct law in confirming the Arbitration Award?

2.    Whether the bankruptcy court correctly concluded that the arbitration proceeded according to its orders and that the arbitrators did not exceed their authority?

3.    Whether the bankruptcy court correctly concluded that the arbitrators were not guilty of misconduct and had not ignored sufficient cause to postpone or dismiss the arbitration?

## STANDARD OF REVIEW

Reviewing courts review trial court decisions to confirm arbitration awards *de novo*, but review of the actual award both is "both limited and highly deferential." (*See Schoenduve Corp. v. Lucent Tech., Inc.*, 442 F.3d 727, 730 (9th Cir. 2006).) Courts may vacate awards only if the awards are completely irrational, exhibit a manifest disregard of the law, or otherwise fall within one of the grounds set forth in the applicable arbitration statute. (*See Coutee v. Barington Capital Group*, 336 F.3d 1128, 1133 (9th Cir. 2003).) Vacation of an award is only warranted where the court is convinced that the award was procured by

1

misbehavior of the Panel, *see, e.g., Schoenduve, supra,* 442 F.3d 727; *French v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 784 F.2d 902, 906 (9th Cir. 1986); *Hilltop Condos. Inc. v. Lou Park Apts.,* 324 N.W. 2d 236 (1982), that there was some nexus between the alleged misconduct of the Panel and the basis for the arbitration award, *see Conoco, Inc. v. Oil, Chem., & Atomic Workers' Int'l Union,* 26 F. Supp.2d 1310, 1320 (N.D. Okla. 1998), and that the misconduct amounted to immoral, if not illegal conduct. (*A.G. Edwards, Inc. v. McCullough,* 967 F.2d 1401, 1403 (9th Cir. 1992).)

## STATEMENT OF THE CASE

In 2005, Betta Products, Inc. ("Betta") commenced an adversary proceeding in bankruptcy court against DSS for breach of the 1996 Warehousing Agreement. Its complaint alleged that DSS had failed to return inventory and had overcharged for its services. Betta and the Betta Products, Inc. Litigation Trustee ("Trustee") subsequently commenced an arbitration proceeding against DSS on those claims.

In the middle of the arbitration, Betta and the Trustee moved the bankruptcy court to amend the complaint to add various tort claims against DSS for essentially the same alleged wrongdoing—failure to return inventory and overcharging. The bankruptcy court granted the motion but specifically instructed the parties and the arbitrators that the arbitration should proceed as the arbitrators determined.

Betta and the Trustee asked the panel to postpone or dismiss the arbitration, but the Panel denied their request. The arbitration proceeded and ended with an award in favor of DSS. DSS moved to confirm, and Betta and the Trustee moved to vacate the award principally on the ground that the Panel had been guilty of misconduct, fraud, and corruption and had violated the bankruptcy court's orders in refusing Betta's and the Trustee's requests to postpone or dismiss the arbitration. The bankruptcy court confirmed the award and denied Betta's and the Trustee's motion, saying, *inter alia*,

> [n]othing in the record even creates a triable issue of fact as to this slanderous assertion [that the award was obtained by fraud, corruption, or other undue means]. [Betta's and the Trustee's argument] "that the arbitration proceeded contrary to this court's orders and desires. . .is completely false. . . Contrary to Betta's arguments, the arbitrators acted consistently with this court's orders and did not misinterpret anything. The court anticipated that the arbitrators would adjudicate the contract claims. . . That is exactly what happened. ". . .[t]he arbitrators acted fairly and properly in refusing to continue the arbitration. Having voluntarily absented itself, Betta cannot now complain because it lost and was assessed the cost of arbitration. In fact, Betta owes the arbitrators an apology for the contempt it displayed to them and the arbitration process.

(ER pg. 1027-29.)[1]

Judgment confirming the award was entered on March 1, 2007. Betta and the Trustee appeal from that judgment.

---

[1] "ER pg." is the reference chosen by appellants to refer to pages in the Appendix.

## STATEMENT OF FACTS

Betta and DSS entered into the Warehouse Agreement as of May 1, 1996.

(ER pg. 118-31.) Under the Warehouse Agreement, Betta stored its products in

DSS' warehouses located in both Minnesota and California; DSS provided, and

Betta used, DSS' warehouse services to receive, store, record, and transport

products to Betta and Betta's customers as ordered by Betta; Betta agreed to pay

DSS for those services; and Betta gave DSS a lien on its products to secure

payment of the fees it owed DSS.  The Warehouse Agreement also provided that:

> Any disagreement or dispute arising under the
> Agreement between the parties may be
> submitted by either party to binding arbitration
> in St. Paul, Minnesota, under the rules of the
> American Arbitration Association then in effect.
> Upon written notice of demand for arbitration of
> any matter relating to this Agreement the party
> receiving such notice shall be deemed to have
> agreed to such arbitration, and such matter shall
> no longer be subject to the jurisdiction of any
> court, except to enter judgment of any decision
> of the arbitrator.

(ER pg. 127-28, ¶ 19.)

On April 6, 2005, Betta transferred all of its claims against DSS irrevocably

to the Trustee. (ER pg. 630-45.) On April 14, 2005, Betta sued DSS for breach of

the Warehouse Agreement. It alleged that DSS breached the Agreement by

refusing to turn over inventory, by overcharging for certain services; and by

failing to safeguard and account for the inventory. (ER pg. 0001-04.) All of those claims were based on allegations of payments due, overcharges, and lost or damaged goods and arose under the Warehouse Agreement, which, on demand of DSS, had to be arbitrated.

On May, 18, 2005, DSS moved the Court to compel arbitration. The Court granted DSS's motion and ordered Betta, if it desired to pursue the claims contained in the complaint,

> . . .to arbitrate the claims raised in the Complaint dated April 13, 2005, in accordance with the parties' contract, in St. Paul, Minnesota in accordance with the rules of the American Arbitration Association currently in effect. This action is hereby stayed pending disposition of the arbitration, or pending further order of this Court. . .

(ER pg. 0039.) The bankruptcy court retained jurisdiction to enter judgment. *Ibid.*

On October 31, 2005, Betta filed a Demand for Arbitration with the American Arbitration Association ("AAA"). (ER pg. 375.) Betta and the Trustee filed an amended demand for arbitration on November 4, 2005, adding the Trustee as a Claimant. (ER pg. 332, ¶11.)

The AAA took control of the demand, and the parties chose a panel of three arbitrators, expert in warehouse management and distribution issues, to arbitrate the proceedings in accordance with the rules of the American Arbitration Association. (ER pg. 681-701; 828-34.) On March 17, 2006, the parties and the Panel agreed to a final hearing date, November 13, 2006, and the parties agreed to

follow the rules of the AAA. (ER pg. 038-39; ADD-14[2] *et seq*.) The Panel held a

number of hearings, the parties agreed to a timetable for and engaged in discovery,

including depositions and the exchange of documents. (ER pg. 681-716.)

On March 17, 2006, the Panel ordered Betta and The Trustee to make a

more definitive statement of their claims, and on March 27, 2006, Betta and the

Trustee filed and served their Specification of Claims. (ER pg. 718-30.) The

Specification alleged that DSS breached the Warehouse Agreement because it did

not return the inventory and because it overcharged for its services. (ER pg. 718-

30.)

The parties conducted discovery, including exchanging documents and

conducting depositions. (ER pg. 616, ¶12.) The Panel called a preliminary hearing

for September 26, 2006, to set a timetable for exchanging pre-hearing materials.

At the request of counsel for Betta and the Trustee, the Panel gave them until

October 11, 2006, to respond to the motion and confirmed that the parties were

given until October 18, 2006, to exchange exhibit and witness lists. In addition,

the Panel granted the request of counsel for Betta and the Trustee to give them

until October 18, 2006 to provide their damages analysis. (ER pg. 731.)  On

September 29, 2006, Betta and the Trustee served DSS with their second set of

requests for production of documents, first set of requests for admission, and first

---

[2] "ADD-" refers to pages in Appellee's Addendum attached hereto.

set of interrogatories, all of which DSS answered November 2, 2006. (ER pg. 617, ¶15.) Betta and the Trustee never delivered their pre-hearing documents. (ER pg. 617, ¶17.)

Instead, on October 13, 2006, Betta and the Trustee moved the Court to amend the Complaint to add certain tort claims and one implied contract claim. The Court granted their motion to amend the Complaint, but specifically told the parties and the arbitrators that the arbitration should proceed according to what the "AAA or its panel of arbitrators deems proper," (ER pg. 430-31), and that the arbitration should proceed first and that it did not intend to interfere with the arbitration. (ER pg. 451.)

Betta and the Trustee responded by asking the Panel to stay the arbitration proceedings. (ER pg. 455-56.)  The Panel set a hearing for October 27, 2006, to hear Betta's and the Trustee's request.  (ER pg. 466.) The Panel held the hearing and denied Betta and the Trustee's request on the grounds that postponement would cause DSS undue hardship and that Claimants had not shown the Panel any authority permitting a party to withdraw or unilaterally curtail an arbitration. The Panel ordered the arbitration to proceed. (ER pg. 469-70; 503-05.) At the commencement of the Arbitration, on notice to all parties, the Panel gave Betta and the Trustee another opportunity to be heard on their requests to postpone or dismiss the Arbitration, but they declined to appear. (ER pg. 778; 501-05.)

7

The arbitration was held as scheduled, the Panel received the evidence, and, based on that evidence, the Panel denied Betta's and the Trustee's request to cancel the arbitration and denied on the merits each of Betta's and the Trustee's claims that DSS had breached the Warehouse Agreement in any way. The Panel also ordered Betta and the Trustee to pay the costs and expenses of the Arbitration. (ER pg. 506.)

DSS moved to confirm the Award. (ER pg. 610-13.) Betta and the Trustee moved to vacate the award principally on the ground that the Panel had exceeded its authority in ordering them to pay costs; had been motivated by "greed;" was guilty of misconduct, fraud, and corruption; and had violated the bankruptcy court's orders in refusing Betta's and the Trustee's requests to postpone or dismiss the arbitration. (ER pg. 844.) The bankruptcy court confirmed the award, ER pg. 1029, and judgment was entered on March 1, 2007. (ER pg. 1049.)  Betta and the Trustee appeal from that judgment. (ER pg. 1121.)

## SUMMARY OF THE ARGUMENT

1.    The bankruptcy court held that since the Warehouse Agreement involved interstate commerce, the Federal Arbitration Act ("FAA") applied to questions related to confirming the Award. (ER pg. 1028.) The court's decision was correct under both Ninth Circuit and Minnesota precedent. (See, e.g., *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir.

1983); *Churchill Envtl. & Indus. Equity Partners, L.P. v. Ernst & Young, L.L.P.,* 643 N.W.2d 333, 336 (Minn. Ct. App. 2002) (holding, under Minnesota law, that the FAA governs arbitrability of interstate transactions whether the plaintiff asserts federal or state claims and that it preempts conflicting state law).) Ultimately, however, both the FAA and the Minnesota Uniform Arbitration Act ("MUAA") mandate confirmation of the award. (*See* 9 U.S.C. § 10, ADD-3, and MINN. STAT. §572.18, ADD-10.)

2.     The Panel acted within the powers granted to it and in proper response to the submission. The scope of the Arbitrators' powers is contained in the language of the Warehouse Agreement. (*See Schoenduve Corp. v. Lucent Tech., Inc.,* 442 F.3d 727, 732 (9th Cir. 2006) (holding scope of panel's authority is contained in the contract and the submission); *see also DVC-JPW Investors v. Gersham,* 5 F.3d 1172 (8th Cir. 1993) (holding court may not vacate award on grounds panel exceeded authority if panel acted within the scope of the agreement).) The Panel's construction of the submission and its interpretation of its duties drawn from the Agreement, the Orders, and the AAA Rules were correct. (*See Schoenduve, supra,* 442 F.3d at pp. 730-31.)

3.     The primary issue in examining, under the FAA, whether to vacate an award because the arbitrators denied a request for a postponement of an arbitration is whether the arbitrators engaged in any misconduct in connection with that

denial. (*See* 9 U.S.C. 10(a)(3), ADD-3.) The entire record manifestly illustrates that the Panel did engage in any misconduct in connection with its denial of Betta's and the Trustee's request for a postponement. (*See*, e.g., ER pg. 499-517; 1029.)

Under AAA rules '[t]he arbitrator shall have the power to rule on his or her own jurisdiction. . .," ADD-20, Rule R-7, decide whether to grant a postponement, ADD-23, Rule R-28, or extend any time established by the rules. (ADD-25, Rule R-38.) The Panel followed those rules, ER pg. 503, and the bankruptcy court's order that the decision whether to stay the arbitration proceeding is "up to the arbitrator." (ER pg. 431.)

## ARGUMENT

## I.    THE BANKRUPTCY COURT APPLIED THE CORRECT LAW IN CONFIRMING THE ARBITRATION AWARD.

### A. California Law Has No Application to this Case.

With absolutely no attribution or authority, Betta and the Trustee assert that

> . . .since the written contract between the parties states only that Minnesota substantive law shall be used in governing the agreement between the parties but does not mention procedural law, California procedural law controls, especially because the original adversary proceeding was filed in California and Betta is a California corporation.

(Appellants' Brief at 13.) That statement makes no sense, misstates what the Warehouse Agreement says, and flaunts almost two centuries of American

jurisprudence. If, as Betta and the Trustee assume, the standards established for

reviewing arbitration awards involve procedural rather than substantive law (a

dubious assumption to begin with[3]), then federal, not state law applies. (*See*

*Wayman v. Southard,* 23 U.S. (10 Wheat) 1 (1825); *see also Erie R. Co. v.*

*Tompkins,* 304 U.S. 64 (1938) and its progeny, including *Hanna v. Plumer,* 380

U.S. 460 (1965); 28 U.S.C. §2702 (a).)

　　More importantly, this case was commenced based on a claim of federal

question, not diversity jurisdiction, ER pg. 0001, and involves an arbitration

agreement that calls for application of Minnesota law. (ER pg. 034.) Therefore,

California law has absolutely no application. (*C & L Enter., Inc. v. Citizen Band of*

*Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 419 (2001) (holding

contract's choice of law clause should be enforced); *Combined Ins. Co. of America*

*v. Bode*, 247 Minn. 458, 464, 77 N.W.2d 533, 536 (1956) (holding that parties

acting in good faith may choose what law to govern their contract); *Milliken & Co.*

*v. Eagle Packaging, Inc.*, 295 N.W.2d 377, 380 (Minn. 1980) (enforcing contract's

New York choice of law).)

---

[3] The Federal Arbitration Act created a body of substantive law. (*See Southland Corp. v. Keating,* 465 U.S. 1, 11 (1984); *see also  Churchill Envtl. & Indus. Equity Partners, L.P. v. Ernst & Young, L.L.P.,* 643 N.W.2d 333 (Minn. Ct. App. 2002).)

## B. The Bankruptcy Court Correctly Applied Federal Law.

The Warehouse Agreements says that Minnesota law should govern disputes under the Agreement, but Minnesota law, in turn, calls for application of the FAA in this case. (*See Onvoy, Inc. v. Shal, L.L.C.*, 669 N.W.2d 344, 351 (Minn. 2003) (holding FAA preempts Minnesota law and agreements choosing Minnesota law, if those agreements involve interstate commerce) *overruling Atcas v. Credit Clearing Corp*, 197 N.W.2d 448 and *Thayer v. American Fin. Advisers, Inc.* 322 N.W.2d 599;  *see also Churchill Envtl. & Indus. Equity Partners, L.P. v. Ernst & Young, L.L.P.,* 643 N.W.2d 333 (Minn. Ct. App. 2002) (holding that FAA governs the arbitrability of interstate transactions, regardless of whether the plaintiff asserts federal or state law claims; it preempts conflicting state law).) Since the Warehouse Agreement undeniably involves interstate commerce, Minnesota law mandates that the Federal law apply. (*See Ibid.*) Ultimately, however, the result would have been the same under either the FAA or the Minnesota Uniform Arbitration Act ("MUAA"). (*See infra.*)

## C. Confirmation of the Arbitration Award was Correct under the FAA and the MUAA.

A party attacking an arbitration award faces an extraordinary burden to convince the reviewing court that (1) the award was procured by misconduct of the panel, *see, e.g., CT Shipping Ltd. v. DMI (USA) Ltd.*, 774 F. Supp. 146 (S.D. N.Y.

1991) (holding decision to postpone falls within the broad discretion of panel); *see also McQuaid Market House Co. v. Home Ins. Co.*, 147 Minn. 254, 180 N.W. 97 (1920); *Hilltop Constr. Inc. v. Lou Park Apts.,* 324 N.W. 2d 236 (1982), (2) there was some nexus between the alleged misconduct of the Panel and the basis of the arbitration award, *see Conoco, Inc. v. Oil, Chem., & Atomic Workers' Int'l Union,* 26 F. Supp.2d 1310, 1320 (N.D. Okla. 1998), and (3) the misconduct amounted to immoral, if not illegal, conduct. (*A.G. Edwards, Inc. v. McCullough*, 967 F.2d 1401, 1403 (9th Cir. 1992).)

Even if the Panel made errors in its factual findings and interpretations of law, that would not justify review or reversal on the merits. (*See Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1486 (9th Cir 1991) (holding courts may not predicate vacation of an award on an arbitration panel's erroneous findings of fact or conclusions of law)*; Rossi v. Trans World Airlines Inc.*, 507 F.2d 404 (9th Cir. 1974) (holding courts will not review merits of an arbitration award so long as award is arguably based on the appropriate contract); *Certain Underwriters at Lloyds, London v. Argonaut Ins. Co.*, 264 F. Supp.2d 926 (N.D. Cal. 2003) (holding that narrow scope of review and generous deference to be accorded to arbitrators under FAA and having found arguable basis in contract for interim order court could not conclude that panel had exceeded its powers in issuing Interim Order No. 2, which required party to make either interim

cash payment or post letter of credit); *Hunter, Keith Ind., Inc. v. Piper Capital Management, Inc.*, 575 N.W.2d 850 (Minn. Ct. App. 1997) (holding reviewing court will vacate award only when it is clearly shown that arbitrator exceeded his authority); *Hilltop Constr., Inc. v. Lou Park Apts.*, 324 N.W.2d 236, 239 (Minn. 1982) (holding absent clear showing that arbitrators were unfaithful to their obligations, courts assume they did not exceed authority).)

> As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

(*Employers of Wausau, supra,* 933 F.2d at p. 1486.)

Under the very narrow standard dictated by Federal law, as well as Minnesota law, this well reasoned and considered Award, clearly based on and confined to the contract in question and the submissions from the bankruptcy court, was properly confirmed. (*See id.*, at pp. 1485-86; 324 N.W.2d at 239 *see also Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003).)

## II. THE ARBITRATORS FOLLOWED THE BANKRUPTCY COURT'S ORDERS AND ACTED WITHIN THE POWERS GRANTED TO THEM.

### A. The Panel Did Not Exceed its Authority.

The scope of the Arbitrators' powers is contained in the Warehouse

Agreement and the bankruptcy court's orders. (*See Schoenduve Corp. v. Lucent Tech., Inc.,* 442 F.3d 727, 732 (9th Cir. 2006) (holding scope of panel's authority is contained in the contract and the submission); *Burchell v. Marsh,* 58 U.S. 344, 349 (1854) *cited in San Martine Companie De Navegacion, S.A. v. Saguenay Terminals Ltd.,* 293 F.2d 796, 800 (9th Cir. 1961) (refusing to set aside even an award that was open to serious question so long as it was one within the terms of the submission); *see also DVC-JPW Investors v. Gersham,* 5 F.3d 1172 (8th Cir. 1993) (holding court may not vacate award on grounds panel exceeded authority if panel followed agreement); *see also Rossi v. Trans World Airlines Inc.,* 507 F.2d 404 (9th Cir. 1974).)

The Warehouse Agreement and the bankruptcy court's orders specifically called for the AAA Rules to govern the arbitration of the disputes raised in Betta's Specification of Claims. The Panel enforced the Agreement and those orders according to their terms. The Panel's construction of the submission and its interpretation of its duties are not subject to attack. (*See Schoenduve,* 442 F.3d at 730-31; *see also San Martine Companie, supra,* 293 F.2d at p. 800; *Continental Materials Corp. v. Gaddis Min. Co.,* 306 F.2d 952, 954 (10th Cir. 1962).)

The only question reviewable on a motion to vacate on grounds that the arbitrators exceeded their authority, is whether they addressed an arbitral issue. The Court may not examine the record or evidence underlying the arbitration

award, or otherwise delve into the merits of the Award. (*See Lundgren v. Freeman,* 307 F.2d 104 (9th Cir. 1962) (holding that where agreement submitted all disputes, claims, or questions under the agreement, questions of law were arbitral); *Schoenduve, supra,* 442 F.3d at p. 732 (holding agreement to arbitrate any dispute relating to agreement made all aspects of the agreement, including claims for commissions based on quasi contract and estoppel, arbitral).)

The Arbitration Panel addressed only the requests to postpone or dismiss the arbitration and the breaches of contract alleged by Betta and The Trustee in their Specification of Claims. (ER pg. 505-06.) Those issues clearly fall within the arbitral claims included within the Warehouse Agreement (requiring arbitration of "any matter relating to this Agreement"), (ER pg. 127), the bankruptcy court's July 11, 2005, Order (compelling the parties to arbitrate the claims raised in the complaint in accordance with the parties' contract in St. Paul, Minnesota in accordance with the rules of the American Arbitration Association then in effect"), (ER pg. 39), and the bankruptcy court's October 20, 2006, Order (reaffirming that the arbitration may proceed "as the AAA or its panel of arbitrators deems proper"), (ER pg. 169. *See Schoenduve, supra,* 442 F.3d at 730-31.)

Once the arbitrators have been found to have the requisite authority to decide the case, they will be presumed to have relied on permissible grounds for their rulings. (*See A.G. Edwards, Inc. v. McCullough,* 967 F.2d 1401, 1403 (9th Cir.

1992).) The Court may set aside the Award only if Betta and the Trustee meet their burden of proving that the arbitrators clearly exceeded their authority. (*See Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003) (holding court may not set aside award unless it is "completely irrational" or entered in "manifest disregard of the law"); *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1486 (9th Cir 1991) (holding that serious error in making the award is not enough to support setting it aside so long as arbitrator acted within scope of authority).)

Unless there is a clear showing that the Arbitrators were unfaithful to their obligations, the Court must assume that they acted within their powers. (*See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597-98 (1960); *see also A.G. Edwards, Inc. v. McCullough*, 967 F.2d 1401, 1403 (9th Cir. 1992), *Certain Underwriters at Lloyds, London v. Argonaut Ins. Co.*, 264 F. Supp.2d 926 (N.D. Cal. 2003).) There is no such "clear showing" in this case. In fact, the record demonstrates that the Panel acted within the scope of the authority bestowed on it by the Warehouse Agreement and submitted to it under the bankruptcy court's orders.

Betta and the Trustee rely on *Totem Marine Tug & Barge, Inc. v. North American Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979) to support their argument for vacating the Award, but *Totem Marine* offers no direction or assistance to this

Court in its review of the Award. In *Totem*, the arbitrator's award was set aside

because the arbitrator accepted an *ex parte* tender of evidence on damages and

then awarded damages three times larger than those requested in the original

submission. (*Id.*, at p. 651.) Those facts bear no similarity to facts in this record,

which contains no evidence, let alone a clear and convincing showing, that the

Arbitrators were unfaithful to their obligations. On the contrary, they gave Betta

and The Trustee every opportunity to persuade them of their positions. (*See*

Award, ER pg. 503-07.)

## B.    The Panel Did Not Enter a Default Judgment.

Betta and the Trustee also charge that the Panel exceeded its powers by

"entering a default judgment at the urging of a party that did not have any asserted

claims." (Appellants' Brief at 22.) They have never offered any evidence of or

explained why they contend the Award constituted a "default judgment," although

they imply it is because they chose voluntarily not to appear, and the Panel then

made an award in DSS's favor on the merits and apportioned arbitration expenses.

(Appellants' Brief at 22.) Implicit in that argument is their attempt to benefit from

their own voluntary decision, made at their peril. Betta and the Trustee may not

decline to attend the arbitration and then contend that because they were not

present, the Award became a "default judgment." (*See Blue Mountain Constr. Co.*

*v. Werner*, 270 F. 2d 305, 307-08 (9th Cir. 1959) (noting that plaintiff, which

18

decided not to proceed with case following denial of motion to dismiss without prejudice and instead to rely on appeal of that decision, did so at its peril, and could not be heard to complain following dismissal with prejudice for failure to prosecute and loss of appeal); *El Dorado School dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843 (8th Cir. 2001) (holding party's failure to attend and participate in scheduled hearing was result of its own decision); *see also* ER pg. 1029 (holding that Betta's "voluntary boycott of the arbitration hearing resulted in a predictable, and quite proper, award against it for the DSS' (sic) costs and the expenses of the arbitration."); *State v. Joseph*, 636 N.W. 322, 329 (Minn. 2001) (observing that when a litigant is willing to gamble on a lawsuit and sit silent when he has an opportunity to present evidence, he should be bound by the result).)

The charge of entering a default judgment in excess of the Panel's authority is equally indefensible because the AAA rules prohibit default judgments, require hearings and awards on the merits even where, as here, one party chooses voluntarily not to appear, and provide for apportionment of arbitration expenses. (*See* AAA Rules R-29, R-43, and R-50, ADD-24-26.) That is precisely what the Panel did.

The Panel viewed all of the evidence presented, catalogued that evidence, analyzed it, and entered an Award, concluding that Betta and the Trustee had not

19

met their burden to postpone or dismiss the arbitration and that Betta's and the

Trustee's claims that DSS had not returned inventory belonging to Betta or Wells

Fargo and had charged them excess fees for servicing that inventory were without

merit. (*See* ER pg. 499-517.) The Award also apportioned the expenses of the

arbitration in strict compliance with the AAA rules. (*See* ER pg. 506 and ER pg.

482-84, Rules R-29, R-43, and R-50.)

The Panel's award was proper, and this Court should affirm the bankruptcy

court's judgment confirming it. (*See, e.g., Coutee, supra*, 336 F.3d at 1132;

*Employers of Wausau, supra*, 933 F.2d at p. 1486; *Certain Underwriters at*

*Lloyds, supra,* 264 F. Supp.2d 926.)

### C.    The Result Would Have Been the Same under the MUAA.

Even if the bankruptcy court had applied Minnesota law, as Betta and the

Trustee argue, alternatively, that it should have, Appellants' Brief at 13, that

would not have changed the result. (*See Office of State Auditor v. Minnesota Ass'n*

*of Prof'l Employees,* 504 N.W.2d 751, 755 (Minn. 1993) (holding arbitrator is free

to adopt reasonable definitions and craft remedy which will not conflict with terms

of agreement, and role of court in such cases is solely to determine whether

specific language in the agreement or submission precludes the arbitrator's

decision); *Liberty Mut. Ins. Co. v. Sankey,* 605 N.W.2d 411 (Minn. Ct. App. 2000)

(holding that only question raised by motion to vacate on grounds that arbitrators

exceeded their authority is whether they addressed an arbitral issue and whether the issues addressed by the Panel fall within the submission); *EEC Property Co. v. Kaplan*, 578 N.W.2d 381 (Minn. Ct. App. 1998) (unless there is a clear showing that the Arbitrators were unfaithful to their obligations, the Court must assume that they acted within their powers).) The Panel's award was proper, and this Court should affirm the bankruptcy court's judgment under the MUAA as well as the FAA. (*See Sankey, supra,* 605 N.W.2d 411.

### D.    The Panel Properly Addressed Matters Submitted to it.

For the first time on appeal, Betta and the Trustee claim that the Panel improperly considered claims not put before it and that it made an award that covered the Trustee, who was not a party to the arbitration. (Appellants' Brief at 21-22.)[4] First, they may not raise those issues here for the first time. (*See, e.g., Kamiyama v. Carr,* 44 F.2d 503, 505 (9th Cir. 1930) (holding issues not raised in trial court will not be considered in reviewing court); *see also Johnstone v. Comm'r.,* 76 F.2d 55, 59 (9th Cir. 1935); *Benedict v. Benedict*, 361 N.W.2d 429, 431-32 (Minn. Ct. App. 1985).) Second, the contract claims identified by Betta and the Trustee were presented to the Panel, *see* Specification of Claims, ER pg. 718-29, and the Trustee was a claimant. (*Ibid.*)

---

[4] They did not even raise those issues in their "Statement of Issues on Appeal" or list them in their brief. Appellant's Brief at 3-4.

## III. THE ARBITRATORS WERE NOT GUILTY OF MISCONDUCT IN REFUSING BETTA'S AND THE TRUSTEE'S REQUEST FOR A POSTPONEMENT.

The only ground for vacating an arbitration award under the FAA in connection with a request for postponement or dismissal is if the Panel was guilty of misconduct in refusing a postponement upon sufficient cause shown. (*See* 9 U.S.C. § 10, ADD-3-4.) The Panel was not guilty of misconduct here.

The bankruptcy court decided (and later affirmed) that, if Betta desired to pursue the claims it alleged under the Warehouse Agreement, it must arbitrate those claims as provided in the Warehouse Agreement in accordance with the rules of the AAA. Betta and the Trustee decided to do so and thereby submitted to the rules of the AAA. (*See* AAA Rules R-1 and R-2, ADD-19-20.) Under those rules '[t]he arbitrator shall have the power to rule on his or her own jurisdiction. . .' Rule R-7, ADD-20, decide whether to grant a postponement, Rule R-28, ADD-23, or extend any time established by the rules. (Rule R-38, ADD-25.) The bankruptcy court recognized that authority when it stated at the October 13, 2006, hearing that the decision whether to stay the arbitration proceeding is "up to the arbitrator," and Betta's and the Trustee's counsel agreed. (ER pg. 187.) The Court confirmed that rule in its October 20, 2006, Order in which it said the arbitration may proceed "*as the AAA or its panel of arbitrators deem proper including, without limitation, any arguments for a stay or suspension of that proceeding.*"

22

(emphasis added). (ER pg. 169.) See *also El Dorado School dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843, 846 (8th Cir. 2001) (courts will accord even greater deference to the arbitrator's decisions on procedural matters than those bearing on substantive grounds).)

Betta and the Trust tried to convince the Panel to stay or suspend the arbitration. The Panel denied their request because, among other things, Betta and the Trustee "failed to make a showing of 'good cause' for a postponement of the final hearing as required by AAA Rule 28 (much less a showing that would outweigh the prejudice to be suffered by DSS)." (ER pg. 503.) The Panel's ruling did not illustrate a clear abuse of its discretion or exceed its authority. Therefore, this Court should confirm the Panel's decision. (*See Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986) (holding that because principal purpose of arbitration is expeditious resolution of disputes, the Act limits courts' review of refusal to postpone to whether panel was guilty of misconduct).)

Betta and the Trustee also claim the Panel was guilty of misconduct for denying them the opportunity to "withdraw" their claim for arbitration, Appellants' Brief at 20, essentially dismissing the claim, without prejudice. The Panel denied that request as well. ER pg. 503-05. The bankruptcy court confirmed that that decision was consistent with its submission to the Panel. (ER pg. 1027-29.) That determination should not be disturbed by this Court. (*See A.G. Edwards,*

23

*Inc. v. McCullough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (unless there is a clear showing that the panel exceeded the authority granted it in the submission it may not be found to have been guilty of misconduct). Under the Warehouse Agreement, the Rules of the AAA adopted by the parties and confirmed by bankruptcy court, and 9 U.S.C. §10 (a) (3), the Panel's decision to deny Betta's and the Trustee's motion was fair and reflects no evidence of misconduct. (*See* AAA Rule R-7, R-28, R-38, ADD-20, 23, 25; *see also CT Shipping Ltd. v. DMI (USA) Ltd.*, 774 F. Supp. 146 (S.D. N.Y. 1991) (holding decision to postpone falls within broad discretion of panel); *El Dorado School dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843 (8th Cir. 2001) (holding arbitrators not guilty of misconduct for refusing, on grounds of money and time already spent toward scheduled date, to postpone hearing because of family member surgery; and party's failure to attend and participate in scheduled hearing was result of its own decision); *Liability Sec. Corp. v. Fetcho*, 114 F. Supp.2d 1319 (S.D. Fla. 2000) (holding not misconduct to refuse postponement where panel expressed concern that delay would inconvenience parties and counsel had sufficient time to prepare); *Ceco Concrete Constr. v. JT Schrimsher,* 792 F. Supp. 109, 110 (N.D. Ga. 1992) (finding no misconduct in refusal to postpone despite one party's claim it would be subject to possibility of conflicting results in related proceeding,

because grant or denial of postponement is within the broad discretion of panel and courts are reluctant to interfere with arbitrators' reasoning).)

Since only misconduct in denying requests to postpone or dismiss arbitrations will support motions to vacate on those grounds, since Betta and The Trustee have offered no proof of such misconduct, and since the Panel clearly acted within the scope of its authority and did not commit any misconduct, this Court should affirm the confirmation of the Award.

The result would not have changed under Minnesota law. (*See Altimus v. Hyundai Motor Co.*, 578 N.W.2d 409, 411 (Minn. Ct. App. 1998) (holding that decision on plaintiff's motion to dismiss without prejudice is solely within the discretion of the trial court); and *Office of State Auditor v. Minnesota Ass'n of Prof'l Employees,* 504 N.W.2d 751 (Minn. 1993).)

## CONCLUSION

For the foregoing reasons, DSS requests that the District Court affirm the judgment of the bankruptcy court.

Dated:  August 13, 2007                  Respectfully submitted,

_____/s/ James Anton Beitz_____
HAGERTY JOHNSON & BEITZ P.A.
James Anton Beitz, Minn. Atty. Id. No. 233
701 Fourth Avenue, South, Suite 700
Minneapolis, Minnesota  55415
Telephone:  (612) 349-9000
*(Appearing Pro Hac Vice)*

ABBEY, WEITZENBERG, WARREN &
EMERY
Richard W. Abbey, Esq., State Bar 53039
Mitchell B. Greenberg, Esq., State Bar
114878
Rachel Nunes, Esq., State Bar 172525
100 Stony Point Road, Suite 200
Santa Rosa, CA  95402-1566
Telephone:  707-542-5050
Facsimile:  707-542-2589
Attorneys for Defendant, Appellee

## FED. R. APP. PRO. 32(a)(7)(C) CERTIFICATE OF COMPLIANCE

This Brief was prepared using Microsoft Word for Windows 2002 (10.2627.2625),
and it contains 5,817 words of text, in 514 lines on 25 pages, using 14 point Times
New Roman font.

Dated:  August 13, 2007

_____/s/ James Anton Beitz_____
HAGERTY JOHNSON & BEITZ P.A.
James Anton Beitz, Minn. Atty. Id. No. 6233
701 Fourth Avenue, South, Suite 700
Minneapolis, Minnesota  55415